479 So.2d 1308 (1985)
Harold Eugene SEARS
v.
STATE.
3 Div. 952.
Court of Criminal Appeals of Alabama.
May 14, 1985.
Rehearing Denied June 11, 1985.
Certiorari Denied August 30, 1985.
On Return to Remand November 26, 1985.
*1309 John T. Kirk, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and Gerrilyn V. Grant, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 84-992.
PATTERSON, Judge.
Harold Eugene Sears, the appellant, was charged in two indictments: one indictment charged trafficking in cocaine and the other indictment charged, in count one, the illegal possession of diazepam and, in count two, the illegal possession of marijuana. These indictments were consolidated for trial and Sears was determined to be guilty as charged. For his trafficking conviction, Sears was sentenced to imprisonment for a term of fifteen years and fined $25,000. For his possession conviction, he was sentenced to imprisonment for a term of fifteen years, with the sentence to run concurrently with his sentence in the trafficking conviction, and fined $25,000.
For purposes of this appeal, we need only relate the following facts: On the morning of July 29, 1983, Investigator Strope was told by an informant that Sears was leaving his residence at approximately 1:00 p.m. to pick up some cocaine to fill some orders. Investigator Byrd set up surveillance at Sears's residence at 12:15 p.m., while Strope obtained search warrants for Sears's person, motorcycle, house, and automobile. At 1:00 p.m., Byrd observed Sears leave his residence; he followed Sears for a while; and at 3:45 p.m., he observed Sears return to his residence. Sears was then seized, and the search warrants were executed. In Sears's bedroom, the officers discovered drug paraphernalia; in a can under the bed, a small amount of marijuana and two bottles containing diazepam; and another bottle containing diazepam, which was found in a dresser drawer. On Sears's person, the officers found a diazepam tablet and a plastic bag containing 34.1 grams of a mixture containing cocaine, which he had hidden inside his pants. Later, Sears stated that he purchased the seized cocaine for $2,000; that he did not personally use cocaine, but did use diazepam and alcohol; and that if he *1310 had known he was being followed, he would have ditched the cocaine.
Sears contends that he was improperly convicted and sentenced because his simultaneous possession of diazepam, marijuana, and cocaine was not punishable as the multiple offenses of possession proscribed by § 20-2-70(a), Code of Alabama 1975, and trafficking in cocaine proscribed by § 20-2-80(2), but rather was one possession and thus one punishable offense. In support of this contention, Sears relies upon Vogel v. State, 426 So.2d 863 (Ala.Cr.App.1980), aff'd on another ground, writ quashed as to instant issue, 426 So.2d 882 (Ala.1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983), wherein the court expressly held that "where ... there is but a single point of control in time and place over several types of controlled substances, only a single offense has been committed, the offense of possession of controlled substances, and only one sentence is authorized." Id. at 882. This holding is predicated upon the court's consideration of (1) the constitutional double jeopardy provisions, U.S. Const. Amend. V and Ala. Const., Art. I § 9, prohibiting the prescribing of multiple punishments for the same offense, id. at 879; and (2) the language of § 20-2-70(a), which "indicates that the statute prohibits the `possess[ion] ... of controlled substances enumerated in schedules I, II, III, IV, and V and makes such possession `of controlled substances' to be `a felony' with only one scheme of punishment." Id. at 882 (emphasis in original). Upon these considerations, the court reasoned:
"Clearly, the language of the statute indicates that the possession of [controlled] substances renders a defendant `guilty of a felony' and not guilty of several felonies based upon how many drugs are simultaneously within the control of the defendant, or in which schedules they are listed. Once the presence of the first controlled substance is proven, the offense is complete, and the presence of other controlled substances at the same time does not act to split the possession. By applying the principles developed in our case law to the plain language of § 20-2-70(a) we thus find that the possession is the criminal offense, and our section does not sanction basing multiple prosecutions or sentences on the mere fact that several types of drugs were so possessed at one point in time. If the legislature had intended to allow such multiple prosecutions it would have certainly framed this section in language clearly manifesting such intent."
Id. at 882 (emphasis in original.)
As in Vogel, Sears's right to be free from multiple trials for the same offense has not been violated because he has been subjected to only one trial. Rather, the issue is whether, as in Vogel, Sears's protection against multiple punishments for the same offense has been disregarded. However, we find that the court's holding in Vogel is not dispositive of the instant case, for it is confined to its specific facts and the particular statute violated.
In determining if Sears wrongly suffered from multiple punishments for the same offense, we are guided by the following passage from Ohio v. Johnson, 467 U.S. 493, ____, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984):
"In contrast to the double jeopardy protection against multiple trials, the final component of double jeopardyprotection against cumulative punishmentsis designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, United States v. Wiltberger, 5 Wheat. 76, 93 [5 L.Ed. 37] (1820), the question under the Double Jeopardy Clause whether punishments are `multiple' is essentially one of legislative intent, see Missouri v. Hunter, [459] U.S. [359], 365 [103 S.Ct. 673, 678, 74 L.Ed.2d 535] (1983)." (Footnote omitted.)
Thus, we must determine whether the trial court exceeded its legislative authorization *1311 by imposing multiple punishments for the same offense. See Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). However, this determination rests upon whether possession and trafficking constitute the "same offense" for double jeopardy purposes. The test utilized in the federal courts to determine whether the crimes are separate and consequently whether cumulative punishments may be imposed is the test enunciated in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Ohio v. Johnson, 467 U.S. at ___, 104 S.Ct. at 2541, n. 8. In Whalen v. United States, 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980), the United States Supreme Court explained that Blockburger's "rule of statutory construction" is to be employed "to determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively." See also Albernaz v. United States, 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981); Brown v. Ohio, 432 U.S. at 166, 97 S.Ct. at 2225. The applicable test is as follows:
"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."
Blockburger v. United States, 284 U.S. at 304, 52 S.Ct. at 182. As noted in Iannelli v. United States, 420 U.S. 770, 785, n. 17, 95 S.Ct. 1284, 1293, n. 17, 43 L.Ed.2d 616 (1975), "[T]he Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes."
In the instant case, the offense of possession and the offense of trafficking in cocaine are separate offenses governed by separate statutes, §§ 20-2-70 and 20-2-80(2), respectively, which provide separate punishments. However, neither statute suggests whether the Alabama Legislature intended that cumulative sentences be imposed when the violation of both statutes has been discovered at the same place and the same time. Thus, we must determine whether the legislature has in fact undertaken to create separate offenses which would allow cumulative punishments in a single trial in a case involving the possession of several controlled substances, one possession supporting the conviction of trafficking and the other supporting the conviction of possession.
We, too, look to the Blockburger test. Clift v. State, 352 So.2d 838 (Ala. 1977), cert. denied, 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978).[1]See also, e.g., Hepstall v. State, 418 So.2d 223, 225 (Ala. Cr.App.1982); Brown v. State, 367 So.2d 557, 559 (Ala.Cr.App.1978), cert. denied, 367 So.2d 559 (Ala.1979). Applying this test to the statutory elements of the two offenses in question in the instant case, it is obvious that, because each offense has at least one statutory element that the other does not, the offenses are separate crimes even though the offenses are based upon the same factual event. Therefore, under the Blockburger test, we hold that the offenses of possession and trafficking were intended by the legislature to be separate *1312 offenses warranting cumulative punishments.[2]
Indeed, we have already reached this holding in Story v. State, 435 So.2d 1360 (Ala.Cr.App.1982), rev'd on other grounds, 435 So.2d 1365 (Ala.1983), wherein the court held that the appellant's conviction for possession of methaqualone was not barred by her prior conviction for trafficking in marijuana, notwithstanding that both charges arose from the same circumstances. In reaching this decision, the court applied the test that a plea of former jeopardy is unavailing unless the offenses are the same in law. Id. at 1364-65.
In addition to determining that Sears's cumulative punishments are not violative of the double jeopardy clause's protection from multiple punishments for the "same offense," we must further determine if § 15-3-8, Code of Alabama 1975, applies and thus prohibits Sears's multiple punishments. Section 15-3-8 reads, in pertinent part, as follows: "Any act or omission declared criminal and punishable in different ways by different provisions of law shall be punished only under one of such provisions...."[3] We deem § 15-3-8 to be inapplicable for two reasons. First, while it has been recognized that such a statute as § 15-3-8 "affords protection similar to, but distinguishable from, that secured by the double jeopardy clause,"[4] the Alabama appellate courts appear to rely on the Blockburger test to determine whether multiple offenses, when ostensibly committed by a single act, are intended to be separately punished. See, e.g., Colston v. State, 350 So.2d 337 (Ala.1977); Jackson v. State, [Ms. 6 Div. 767, April 9, 1985] (Ala.Cr.App.1985). Obviously, this results in the statutory term "act or omission" being synonymous with the double jeopardy term "same offense," thereby confining the statute's protection to the constitutional guarantee against double jeopardy. Thus, we need not deliberate beyond our previous holding that, by the Blockburger test, the offenses of possession and trafficking are separate and distinct offenses committed by separate and
Independent of this first reason, we find § 15-3-8 inapplicable because, although they were combined in one transaction, Sears clearly committed two separate acts; Sears's conduct constituting trafficking in cocaine was distinct from his conduct constituting possession of marijuana and diazepam. See Rikard v. State, 21 Ala. App. 160, 106 So. 347, cert. denied, 214 Ala. 62, 106 So. 347 (1925); Day v. State, 19 Ala.App. 307, 97 So. 117 (1923) (holding that possession of a still is a crime, separate and distinct from possession of prohibited liquors).
From the above analysis, it is plain that the holding of Vogel v. State does not dictate our disposal of the instant case. The case of Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), provides us with a vehicle to contrast the Vogel decision with the instant case. In Gore, the petitioner was convicted and sentenced on six counts for violating three different sections of federal law by a single sale of narcotics on each of two different days. After adhering to its decision in Blockburger, id. at 388, 52 S.Ct. at *1313 1282, the United States Supreme Court stated as follows:
"[T]he various enactments by Congress extending over nearly half a century constitute a network of provisions, steadily tightened and enlarged, for grappling with a powerful, subtle and elusive enemy [the nonmedicinal sales of narcotics]. If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery detection, prosecution and punishmenttighter and tighter. The three penal laws for which petitioner was convicted have different origins both in time and in design.... It seems more daring than convincing to suggest that three different enactments, each relating to a separate way of closing in on illicit distribution of narcotics, passed at three different periods, for each of which a separate punishment was declared by Congress, somehow or other ought to have carried with them an implied indication by Congress that if all these three different restrictions were disregarded but, forsooth, in the course of one transaction, the defendant should be treated as though he committed only one of these offenses."
357 U.S. at 390-91, 78 S.Ct. at 1283. In distinguishing its decision in Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), which involved the application of the Mann Act, prohibiting interstate transportation of "any woman or girl" for prostitution, the Court explained:
"We held that the transportation of more than one woman as a single transaction is to be dealt with as a single offense, for the reason that when Congress has not explicitly stated what the unit of offense is, the doubt will be judicially resolved in favor of lenity. It is one thing for a single transaction to include several units relating to proscribed conduct under a single provision of a statute. It is a wholly different thing to evolve a rule of lenity for three violations of three separate offenses created by Congress at three different times, all to the end of dealing more and more strictly with, and seeking to throttle more and more by different legal devices, the traffic in narcotics. Both in the unfolding of the substantive provisions of law and in the scale of punishments, Congress has manifested an attitude not of lenity but of severity toward violation of the narcotics laws."
357 U.S. at 391, 78 S.Ct. at 1283-1284.
Likewise, the court's decision in Vogel is decidedly different. In Vogel, the result was dictated by the legislature's failure to explicitly state the unit of the offense; by the violation of a single provision of a statute which imposes no differentiating sentence; and by the consequence that elements of proof would have been the same had the conduct of possession been fragmented to form the basis of a separate charge. Thus, the court's holding that possession is one offense which cannot be divided into multiple prosecutions merely because the possession was of several types of drugs at one point in time must be confined to the context of § 20-2-70(a).
On the other hand, the disparate sentencing treatment and proof requirements of the two instant statutes indicate that by enacting the statutes, the legislature intended to create two separate crimes for which separate convictions and cumulative punishments were authorized. Furthermore, the statutes were promulgated at different times to combat different evils: § 20-2-70 was passed in 1971 and penalizes possession to deter unauthorized persons from keeping controlled substances, while § 20-2-80 was enacted in 1980 "to curb an apparent widespread distribution and sale of [such drugs] in the State" for "the legislature saw the need to pass further legislation to control the sale, use, and distribution of [certain controlled substances]". Fowler v. State, 440 So.2d 1195, 1197, 1198 (Ala.Cr.App.1983). Accordingly, we find that the legislature intended to permit the application of both statutes to the present *1314 situation, thereby authorizing multiple punishments.
The other two issues presented by Sears have been carefully considered, but we see no reason to discuss these points, for they present no error or prejudice.
Although we find no error in the trial proceedings, we do find that Sears's $25,000 fine for his conviction of trafficking in cocaine does not comply with the mandatory requirement of § 20-2-80(2)(a) that the fine be set at $50,000. Hence, we remand this cause with the instruction that Sears's sentence for his trafficking in cocaine be corrected to reflect a fine of $50,000, and that when said sentence is corrected, the trial court make due return to this court.
REMANDED WITH INSTRUCTIONS.
All the Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.
This cause was remanded to the trial court with instructions to correct the sentence to reflect a fine of $50,000 instead of $25,000, and make due return to this court. The $25,000 fine initially ordered by the trial court for Sears's conviction for trafficking in cocaine did not comply with the mandatory requirement of § 20-2-80(2)(a), Code of Alabama 1975, that the fine be set at $50,000, when the quantity involved is 28 grams or more, but less than 200 grams.
The trial court has complied with our directions and filed its return. The return reflects that the trial court corrected its order and properly imposed a fine of $50,000. We have reviewed the entire record in this case, and find no reversible error therein. Appellant's conviction and sentence as corrected are therefore due to be affirmed.
AFFIRMED.
All Judges concur.
NOTES
[1] However, as noted in Ohio v. Johnson, 467 U.S. at ___, 104 S.Ct. at 2541, n. 8:

"As should be evident from our decision in Missouri v. Hunter, [459] U.S. [359, 103 S.Ct. 673, 74 L.Ed.2d 535] (1983), however, the Blockburger test does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under Blockburger, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end."
However, by virtue of § 15-3-8, which has been interpreted to encompass the Blockburger test (discussed infra), Missouri v. Hunter would seem to require that Blockburger be applied in Alabama. See P. Robinson, Criminal Law Defenses § 68(d) n. 27 (1984). Compare McCullough v. State, 451 So.2d 398 (Ala.Cr.App.), cert. denied, 451 So.2d 400 (Ala.1984).
[2] We offer a caveat regarding this general holding: if the offenses of possession and trafficking stem from possession of the same controlled substance, the two offenses are not separate offenses, but rather the offense of possession is a lesser offense included in the offense of trafficking. See Kerr v. State, [Ms. 83-1342, March 8, 1985] 474 So.2d 145 (Ala.1985).
[3] While § 15-3-8 proscribes multiple punishments, § 13A-1-8(b) pertains to multiple prosecutions and convictions. Thus, conceivably, unless one of the four exceptions of § 13A-1-8(b) is present, multiple convictions arising from the same conduct are not prohibited by § 13A-1-8(b); however, by virtue of § 15-3-8, multiple punishments based upon these convictions are prohibited, without exception. But, see Ball v. United States, ___ U.S. ___, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985).
[4] Robinson, supra, note 2, at 329. See also Rowell v. State, 447 So.2d 196 (Ala.1984) (Jones, and Adams, JJ., dissenting).